[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] CORRECTED MEMORANDUM OF DECISION
This is an action for the dissolution of a marriage. The parties married in Stamford, Connecticut on March 28, 1981. They have resided continuously in this state for at least twelve months before the date of filing the complaint; therefore, the court has jurisdiction.
This is the only marriage for both parties. There is one minor child who is issue of this marriage, Cody Heisinger, born October 28, 1985.
 I. Facts of the Case[1]
Diana and Frank Heisinger met in 1970. They married five years later. At the time of their marriage, the plaintiff's assets included two thousand dollars and a car. The defendant, already employed at his current position, had a savings account and inherited stock. Throughout the twenty-six year marriage, the plaintiff cared for the home and child. The defendant always provided the family's financial support. These parties separated November 6, 1997, but attempted reconciliation. This effort failed. They have lived totally separate lives since October 1999.
The plaintiff, Diana Heisinger nee Babnick, is a forty-nine year old homemaker. A high school graduate, the plaintiff was employed prior to the marriage as a professional model. During the marriage, her employment history was minimal.[2] She diligently attended to all household functions. Additionally, she personally provided the labor for many home-remodeling projects.
The plaintiff's health is marred most significantly by the existence of one malfunctioning and another undersized kidney, a fact that sometimes contributes to exhaustion, bladder infections and lower back pain. This condition has been present the plaintiff's entire life. It has progressively worsened. Her back pain was aggravated in 1998 after an CT Page 2478-r automobile accident.[3] Although the plaintiff complains that the back pain renders her incapable of either walking or sitting for long periods of time, the condition has not stopped her ambitious home improvement projects nor has it curtailed her travel to various continents during the past several years.[4]
The defendant, a graduate of Southern Colorado State College with a Bachelor of Science degree, is a fifty-two year old businessman who works for a closely held family corporation, the F.A. Bartlett Tree Expert Company (Bartlett Tree). Since 1985, he has been employed in various administrative capacities. He is currently Vice President of Capital Equipment, a middle management position. He is also on the Board of Directors. The defendant is in good health. His leisure activities include running, gardening, hunting and skiing. In addition to his base salary and bonuses, currently 148,000,[5] use of a car and travel expense reimbursement, the defendant receives dividend and trust income that totals approximately $57,000. The defendant has no pension or profit sharing. He personally contributed to a 401k account.
Even though the plaintiff claims that she played a major role in her husband's career, the facts belie this assertion. The defendant was always employed at Bartlett Tree, a position attributable to genetics rather than his partnership with the plaintiff. The plaintiff never entertained business associates, either at restaurants or at the marital home. The parties never had overnight business guests. The plaintiff rarely attended corporate functions,[6] and only occasionally traveled with the defendant.[7]
The one minor child of this marriage, Cody Heisinger, lives in Weston with his mother. A high school junior, the child is generally healthy. Cody has been seeing a therapist for several years. Additionally, he attends educational consultation sessions.[8] The defendant pays for his child's counseling.
The parties agree that they should have joint legal custody of this child, with his primary residence with the plaintiff. Father and son visit every other weekend from Friday at 6:00 p.m. to Sunday at 8:00 p.m.[9] The plaintiff is not at home when the defendant picks up his child for these weekend parenting sessions.[10]
By November of 1999, this marriage had broken down irretrievably. These litigants had stopped communicating. They were no longer happy in each other's presence. Furthermore, at least during the early years of the marriage, the defendant drank excessively. Additionally and most significantly, the plaintiff was the victim of physical and emotional CT Page 2478-s spousal abuse.[11]
Finally, the plaintiff complained that in May 1998 she was attacked by her husband's close friend, R.[12] When in November of 1998 she finally told her husband of the attempted rape, the defendant did not believe her.[13] Although this last event may have crystallized the plaintiff's resolve to seek a marital dissolution, this court notes that by that time the plaintiff was already in a serious dating relationship. The plaintiff filed her action for dissolution in January 2000.
These parties had lived frugally during their marriage.[14] Their home was an extremely modest, five room cape in Westport, Connecticut. In November 1997 the defendant moved to his father's home in Stamford.[15]
At that time, the parties attempted to reconcile. They attended marriage counseling, but not always together. They also tried to reestablish their earlier dating relationship. Neither effort was successful, perhaps because the plaintiff was already dating other men. Since the summer of 1999, she has kept company with one particular individual, Mr. Mindlling, a person who makes her "feel like a teen."[16]
During this unsuccessful reconciliation period, the litigants ostensibly had decided to begin anew. Part of the process involved the purchase of a new home. The defendant's father loaned the litigants $250,000 toward the purchase of that new home. He also provided a gift of $130,000. The parties anticipated that the defendant's father would live with them in the new residence. They sought a residence large enough to accommodate the defendant's father as well as a private room for the elderly Mr. Heisinger's personal nursing aide.
The parties purchased a home on Godfrey Road in Weston in April 1998. That house, valued at $595,000, was purchased with a combination of funds from the sale of the Westport property together with gifts and loans from the defendant's father.[17] In August 1998 the plaintiff and Cody moved to the Weston home.[18] The defendant remained in Stamford with his father. Neither the defendant nor his father ever resided in the Weston house.
When the plaintiff changed residences, she moved from a small, 1600 square foot Cape in Westport, located on a quarter acre lot in a busy neighborhood, to a 3600 square foot home located on a secluded full acre of land. This is a vast physical and aesthetic improvement over the conditions that existed during the marriage. Similarly, after her receipt of pendente alimony and child support, the plaintiff's discretionary income increased dramatically. CT Page 2478-t
The plaintiff currently has few liquid assets. She drives a 1996 Volvo. She has some jewelry and personal property. Although she withdrew $73,000 from a joint account prior to filing this action[19] she had dissipated those funds by the time of the dissolution hearing. She has neither pensions nor individual retirement accounts. Her savings have been minimal.[20]
As previously noted, the defendant owned stock in the Bartlett Tree at the time of his marriage. He inherited other shares of that company's stock at the time of his father's death in November 2001. As a result of that inheritance, the defendant also will receive approximately $1,065,000.[21] This is an estimate only inasmuch as at the time of the dissolution, the estate was still in probate. Unfortunately, most of the liquid assets will be used to pay estate taxes. The executors need clearance from state and federal tax authorities before they can disburse any funds.[22]
Turning to the inherited stock, Bartlett Tree is a relatively stable enterprise, an industry leader in its particular field. The defendant's grandfather established this company in the early twentieth century. The company recently sold a non-essential division for a substantial profit.[23] Although there are no restrictions in the sale of the stock, that stock is held by family members and a limited number of long time employees. This is a closely held corporation.[24]
The value of the defendant's interest in that company is approximately $2,120,000. This includes the stock received before the marriage and that inherited after the separation but during the pendency of this action. The value of his interest assumes that this is a marketable asset and that the defendant has a reasonable expectation of converting his interest into cash within a reasonable time. There is no ready market for this enterprise. The defendant had no control over any decision to sell the company.
The defendant would have to sell his portion of the family business in order to realize any profit. This stock is not a highly marketable asset.[25] There is no present intent by those in control to sell the family business. Therefore, any value to the defendant is confined primarily to his receipt of dividends.
The defendant does have private life insurance with face value of $105,000. He has an additional $50,000 company policy. The plaintiff is the beneficiary of these insurance policies. The defendant also has several savings and stock accounts, many of which were funded after the parties' separation but, again, before the dissolution of this marriage. CT Page 2478-u
 II. Orders
The court has considered all the facts found in this memorandum of decision in light of the mandate of Connecticut General Statutes Section 46b-81. See Smith v. Smith, 185 Conn. 491, 493, 441 A.2d 140 (1981). The court, having considered all the evidence in light of all relevant statutory criteria, enters the following orders:
1. The marriage of the parties is dissolved on the grounds of an irretrievable breakdown.
2. The parties shall have joint legal custody of the minor child, Cody, born October 28, 1985.
3. The primary residence of the child shall be with the plaintiff. The defendant shall have reasonable, flexible and liberal rights of visitation. That contact shall include visits every alternate weekend, from Friday evening at 7:00 p.m. to Sunday evening at 5:00 p.m. If his weekend visitation is followed by a federal holiday, the plaintiff shall return the child before Monday evening at 5:00 p.m.
4. The defendant shall be solely responsible for the costs associated with the transportation of the child. The defendant shall further be responsible for all physical transportation.
5. The defendant shall have the option of having the child three separate weeks of uninterrupted time during the summer school vacation and will notify the plaintiff in writing by April 30th of the weeks that he intends to exercise that access.
6. The parties shall alternate the following legal holidays and school vacations with the plaintiff having Schedule A for odd-numbered years and Schedule B for even-numbered years. The sharing of said holidays and school vacations shall supersede the regular visitation schedule. Said holidays shall be designated from 9 a.m. until 7 p.m. unless otherwise agreed by the parties or otherwise designated herein. This schedule may be modified upon agreement of the parties.
 SCHEDULE A
Easter weekend
Spring school vacation CT Page 2478-v
Memorial Day weekend
Christmas vacation until 6:00 p.m. on December 26th
 SCHEDULE B
Winter school vacation
Independence Day
Labor Day weekend
Thanksgiving weekend
Christmas vacation as of 6:00 p.m. on December 26th until 6:00 p.m. on New Year's Day.
Regardless of the regular access schedule, the plaintiff shall have the child with her every Mother's Day and the defendant shall have the child with him every Father's Day. Said day is designated to be from 9 a.m. until 7 p.m. unless otherwise agreed by the parties.
7. The defendant shall provide to or for the benefit of the minor child such medical and dental insurance as may be available through his employment. The defendant shall be fully responsible for the cost of any uncovered or unreimbursed medical, dental, psychological or therapy expenses as may be reasonably necessary to or for the benefit of the minor child. These payments shall be made within thirty days of the defendant's receipt of documentation of the expenditure.
8. The defendant shall provide to or for the benefit of plaintiff such medical and dental insurance as may be available through his employment for so long as such COBRA benefits are available. The plaintiff shall be fully responsible for the cost of her uncovered or unreimbursed medical, dental, psychological or therapy expenses
9. The defendant shall pay to the plaintiff as unallocated alimony and child support the amount of Five Thousand Dollars ($5,000) per month. As additional alimony, the defendant shall pay the plaintiff an amount equal to twenty percent (20%) of the amounts he receives from the Heisinger testamentary trusts and any dividends received from Bartlett Tree. The payment of this additional alimony shall be paid on or before December 31st of each year. The alimony award shall terminate upon the happening of any of the following events, whichever first occurs: (a) the plaintiff's death; (b) the plaintiff's remarriage; (c) in the discretion CT Page 2478-w of the court pursuant to Connecticut General Statutes Section 46b-86
(b), or the plaintiff's cohabitation. This amount shall be adjusted after October 28, 2003, the minor child's eighteenth birthday or the child's graduation from high school, whichever shall occur later. For each year that the defendant has this obligation, he shall provide a copy of his tax return no later than July 1st of each year.
10. An immediate wage execution shall enter.
11. Based on the evidence presented, this court does not enter an educational support order.
12. The defendant shall convey to the plaintiff by quitclaim deed any and all interest he may have in the house located at 285 Godfrey Road in Weston, Connecticut, within thirty days of the date of this order. The plaintiff shall be responsible for, and shall indemnify the defendant against, payment of the mortgage, property taxes and insurance and shall be allowed in full any tax deductions therefore.
13. All of the furniture and furnishings in the marital home, with the exception of the items indicated below, are awarded to the plaintiff.
14. The defendant shall receive all his personal effects and personal papers. These items shall include but are not limited to the defendant's Toby mug collection, his knife collection, his antique pistol and a wooden box given the defendant from his sister. They shall also include the defendant's interest in carved wooden statues and a mask collection.
15. Furthermore, the defendant shall receive the following Bartlett/Heisinger family
heirlooms:
One large secretary
One drop top desk
One antique rocking chair used by the Heisinger family
One antique oak bureau
One table (acquired from a family cabin)
One antique dining room breakfront CT Page 2478-x
Indian pottery and baskets acquired from the defendant's grandmother
Heisinger family silverware, including serving tray
Bartlett family coat of arms
Antique books from the defendant's parents and grandparents.
16. Additionally, the parties shall equally divide the family memorabilia.
17. The plaintiff shall arrange for the return of the defendant's possessions. The defendant bears the cost of the removal of this property.
18. Any disputes regarding the distribution of this property shall be referred to the family relations' office for mediation and possible resolution. This court retains jurisdiction to resolve any disputes concerning distribution of personal property.
19. With the exception of the provisions noted in paragraph four (4) above, the defendant is awarded sole interest in the property he has or shall receive from the Donald Heisinger and Jane Heisinger estates.
20. The plaintiff is awarded sole interest in the 1996 Volvo and the personal possessions listed on her financial affidavit. Additionally the plaintiff is awarded sole interest in the following financial accounts:
(a) Fleet Checking Account
(b) Fleet Money Market Account
(c) First Union Account
(d) HUB Account
(e) Series of U.S. Savings Bonds
(f) AIM Weingarten Fund
(g) Salomon Smith Barney Account
21. With the exception of the accounts listed in paragraph (11), the defendant is awarded sole interest in all financial accounts listed on his financial affidavit. From those accounts he shall transfer to the CT Page 2478-y plaintiff the sum of Two Hundred Thousand Dollars ($200,000).
22. The plaintiff is awarded any interest that may exist in her pending lawsuit.
23. The plaintiff shall maintain the custodial accounts currently held for the benefit of the minor child. Those accounts shall be available to the minor child for his post-secondary school educational expenses.
24. The defendant shall pay the plaintiff the sum of $1,400, the arrearage on his pendente lite alimony and child support payments.
25. The defendant shall indemnify and hold harmless the plaintiff for the 2000 federal and state tax returns. In addition the defendant shall indemnify and hold harmless the plaintiff with respect to any other previously filed joint returns, except for any undisclosed income of the plaintiff or deductions attributable solely to her.
26. The parties shall prepare, and be equally responsible for, presenting this court with any plan necessary to effectuate any transfers.
27. Each party shall be equally responsible for the costs of the business valuation expert.
28. Each party shall be responsible for his/her own attorneys fees.
29. For as long as the defendant shall have an alimony or support obligation, he shall cause to have in full force and effect a life insurance policy on his own life in the sum of at least $100,000, naming the plaintiff as the beneficiary thereof as and for trustee for the minor child. The defendant shall provide to the plaintiff satisfactory evidence thereof within thirty (30) days and at such other times as may be reasonably requested by the plaintiff.
30. Except to the extent more specifically set forth herein, each order of the court is to be effectuated within thirty (30) days of the date of this decision.
31. Except to the extent more specifically set forth herein, each party shall retain all assets as shown on their respective financial affidavits, free and clear of any claim or demand by the other, and each party shall be responsible for all liabilities as shown on their financial affidavits and shall indemnify and hold harmless the other party from liability therefore. CT Page 2478-z
Judgment shall enter in accordance with the foregoing orders.
JULIA DiCOCCO DEWEY, JUDGE